Justice Breyer,
dissenting.
This case asks whether the First Amendment protects public employees when they engage in speech that both (1) involves matters of public concern and (2) takes place in the ordinary course of performing the duties of a government job. I write separately to explain why I cannot fully accept either the Court’s or Justice Souter’s answer to the question presented.
I
I begin with what I believe is common ground:
(1) Because virtually all human interaction takes place through speech, the First Amendment cannot offer all speech the same degree of protection. Rather, judges must apply different protective presumptions in different contexts, scrutinizing government’s speech-related restrictions differently *445 depending upon the general category of activity. Compare, e. g., Burson v. Freeman, 504 U. S. 191 (1992) (plurality opinion) (political speech), with Central Hudson Gas & Elec. Corp. v. Public Serv. Comm’n of N. Y., 447 U. S. 557 (1980) (commercial speech), and Rust v. Sullivan, 500 U. S. 173 (1991) (government speech).
(2) Where the speech of government employees is at issue, the First Amendment offers protection only where the offer of protection itself will not unduly interfere with legitimate governmental interests, such as the interest in efficient administration. That is because the government, like any employer, must have adequate authority to direct the activities of its employees. That is also because efficient administration of legislatively authorized programs reflects the constitutional need effectively to implement the public’s democratically determined will.
(3) Consequently, where a government employee speaks “as an employee upon matters only of personal interest,” the First Amendment does not offer protection. Connick v. Myers, 461 U. S. 138, 147 (1983). Where the employee speaks “as a citizen ... upon matters of public concern,” the First Amendment offers protection but only where the speech survives a screening test. Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty., 391 U. S. 563, 568 (1968). That test, called, in legal shorthand, “Pickering balancing,” requires a judge to “balance ... the interests” of the employee “in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.” Ibid. See also Connick, supra, at 142.
(4) Our prior cases do not decide what screening test a judge should apply in the circumstances before us, namely, when the government employee both speaks upon a matter of public concern and does so in the course of his ordinary duties as a government employee.
*446 II
The majority answers the question by holding that “when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.” Ante, at 421. In a word, the majority says, “never.” That word, in my view, is too absolute.
Like the majority, I understand the need to “affor[d] government employers sufficient discretion to manage their operations.” Ante, at 422. And I agree that the Constitution does not seek to “displace]... managerial discretion by judicial supervision.” Ante, at 423. Nonetheless, there may well be circumstances with special demand for constitutional protection of the speech at issue, where governmental justifications may be limited, and where administrate standards seem readily available — to the point where the majority’s fears of department management by lawsuit are misplaced. In such an instance, I believe that courts should apply the Pickering standard, even though the government employee speaks upon matters of public concern in the course of his ordinary duties.
This is such a case. The respondent, a government lawyer, complained of retaliation, in part, on the basis of speech contained in his disposition memorandum that he says fell within the scope of his obligations under Brady v. Maryland, 373 U. S. 83 (1963). The facts present two special circumstances that together justify First Amendment review.
First, the speech at issue is professional speech — the speech of a lawyer. Such speech is subject to independent regulation by canons of the profession. Those canons provide an obligation to speak in certain instances. And where that is so, the government’s own interest in forbidding that speech is diminished. Cf. Legal Services Corporation v. Velazquez, 531 U. S. 533, 544 (2001) (“Restricting LSC [Legal Services Corporation] attorneys in advising their clients and *447 in presenting arguments and analyses to the courts distorts the legal system by altering the traditional role of the attorneys”). See also Polk County v. Dodson, 454 U. S. 312, 321 (1981) (“[A] public defender is not amenable to administrative direction in the same sense as other employees of the State”). See generally Post, Subsidized Speech, 106 Yale L. J. 151, 172 (1996) (“[Professionals must always qualify their loyalty and commitment to the vertical hierarchy of an organization by their horizontal commitment to general professional norms and standards”). The objective specificity and public availability of the profession’s canons also help to diminish the risk that the courts will improperly interfere with the government’s necessary authority to manage its work.
Second, the Constitution itself here imposes speech obligations upon the government’s professional employee. A prosecutor has a constitutional obligation to learn of, to preserve, and to communicate with the defense about exculpatory and impeachment evidence in the government’s possession. Kyles v. Whitley, 514 U. S. 419, 437 (1995); Brady, supra. So, for example, might a prison doctor have a similar constitutionally related professional obligation to communicate with superiors about seriously unsafe or unsanitary conditions in the cellblock. Cf. Farmer v. Brennan, 511 U. S. 825, 832 (1994). There may well be other examples.
Where professional and special constitutional obligations are both present, the need to protect the employee’s speech is augmented, the need for broad government authority to control that speech is likely diminished, and administrable standards are quite likely available. Hence, I would find that the Constitution mandates special protection of employee speech in such circumstances. Thus I would apply the Pickering balancing test here.
Ill
While I agree with much of Justice Soutee’s analysis, I believe that the constitutional standard he enunciates fails *448 to give sufficient weight to the serious managerial and administrative concerns that the majority describes. The standard would instruct courts to apply Pickering balancing in all cases, but says that the government should prevail unless the employee (1) “speaks on a matter of unusual importance,” and (2) “satisfies high standards of responsibility in the way he does it.” Ante, at 435 (dissenting opinion). Justice Souter adds that “only comment on official dishonesty, deliberately unconstitutional action, other serious wrongdoing, or threats to health and safety can weigh out in an employee’s favor.” Ibid.
There are, however, far too many issues of public concern, even if defined as “matters of unusual importance,” for the screen to screen out very much. Government administration typically involves matters of public concern. Why else would government be involved? And “public issues,” indeed, matters of “unusual importance,” are often daily bread-and-butter concerns for the police, the intelligence agencies, the military, and many whose jobs involve protecting the public’s health, safety, and the environment. This aspect of Justice Souter’s “adjustment” of “the basic Pickering balancing scheme,” ante, at 434, is similar to the Court’s present insistence that speech be of “legitimate news interest” when the employee speaks only as a private citizen, see San Diego v. Roe, 543 U. S. 77, 83-84 (2004) (per curiam). It gives no extra weight to the government’s augmented need to direct speech that is an ordinary part of the employee’s job-related duties.
Moreover, the speech of vast numbers of public employees deals with wrongdoing, health, safety, and honesty: for example, police officers, firefighters, environmental protection agents, building inspectors, hospital workers, bank regulators, and so on. Indeed, this categorization could encompass speech by an employee performing almost any public function, except perhaps setting electricity rates. Nor do these *449 categories bear any obvious relation to the constitutional importance of protecting the job-related speech at issue.
The underlying problem with this breadth of coverage is that the standard (despite predictions that the government is likely to prevail in the balance unless the speech concerns “official dishonesty, deliberately unconstitutional action, other serious wrongdoing, or threats to health and safety,” ante, at 435 (Souter, J., dissenting)) does not avoid the judicial need to undertake the balance in the first place. And this form of judicial activity — the ability of a dissatisfied employee to file a complaint, engage in discovery, and insist that the court undertake a balancing of interests — itself may interfere unreasonably with both the managerial function (the ability of the employer to control the way in which an employee performs his basic job) and with the use of other grievance-resolution mechanisms, such as arbitration, civil service review boards, and whistle-blower remedies, for which employees and employers may have bargained or which legislatures may have enacted.
At the same time, the list of categories substantially overlaps areas where the law already provides nonconstitutional protection through whistle-blower statutes and the like. See ante, at 425-426 (majority opinion); ante, at 439-441 (Souter, J., dissenting). That overlap diminishes the need for a constitutional forum and also means that adoption of the test would authorize Federal Constitution-based legal actions that threaten to upset the legislatively struck (or administratively struck) balance that those statutes (or administrative procedures) embody.
IV
I conclude that the First Amendment sometimes does authorize judicial actions based upon a government employee’s speech that both (1) involves a matter of public concern and also (2) takes place in the course of ordinary job-related du *450 ties. But it does so only in the presence of augmented need for constitutional protection and diminished risk of undue judicial interference with governmental management of the public’s affairs. In my view, these conditions are met in this case and Pickering balancing is consequently appropriate.
With respect, I dissent.